UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SIDENSE CORP.,

                Plaintiff,

    v.

KILOPASS TECHNOLOGY INC.,

                Defendant.

Case No.  14-cv-02238-SI

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 44

Now before the Court is defendant Kilopass Technology Inc.'s motion to dismiss.  Dkt. 44. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and **VACATES** the hearing set for December 4, 2015.  Having carefully considered the papers submitted, the Court hereby **DENIES** the motion.

## BACKGROUND

The present dispute requires a summary of the litigation history between the parties.

### 1. The Patent Infringement Case

In 2010, Kilopass Technology Inc. ("Kilopass") brought suit against Sidense Corp. ("Sidense") alleging patent infringement and several other business torts.  *Kilopass Tech. Inc. v. Sidense Corp.*, No. 10-cv-02066 ("*Patent Infringement Case*"), Dkt. 1 (Complaint).

### 2. The Business Torts Case

In August 2011, Sidense filed a separate but related lawsuit against Kilopass alleging:  (1) Defamation; (2) Unfair Competition under the Lanham Trade-Mark Act, § 43(a), *as amended*, 15 U.S.C. § 1125(a); (3) Intentional Interference with Contractual Relations; (4) Intentional

Interference with Prospective Economic Advantage; and (5) Unfair Competition under California Business and Professions Code § 17200 ("UCL"). *Sidense Corp. v. Kilopass Tech. Inc.*, No. 11-04112 ("*Business Torts Case*"), Dkt. 1 (Complaint); Dkt. 8 (Order Relating the Case). Several of the allegations in Sidense's original complaint in the *Business Torts Case* were based on the theory that Kilopass's patent infringement case was a baseless lawsuit. *See id.* at Dkt. 1.

Kilopass moved to dismiss the *Business Torts Case* complaint, arguing that it was protected by litigation privilege and that, like malicious prosecution claims, claims predicated on a baseless lawsuit were not ripe until after the underlying litigation had been concluded in the defendant's favor. *Id.* at Dkt. 10. In response, Sidense voluntarily filed an amended complaint withdrawing its allegations that the *Patent Infringement Case* was baseless. *Id.* at Dkt. 11 (First Amended Complaint).

The Court granted in part a second motion to dismiss filed by Kilopass, and Sidense twice amended its pleadings. *Id.* at Dkts. 35, 40, 56. This left the Third Amended Complaint. *Id.* at Dkt. 56.

On August 16, 2012, this Court granted in part and denied in part Kilopass's motion for summary judgment on the Third Amended Complaint in the *Business Torts Case*.[1] *Id.* at Dkt. 99. This Court granted summary judgment in favor of Kilopass on Sidense's Defamation claims based on the allegations that (1) Kilopass made a statement to a potential customer that Sidense's technology was not commercially viable and (2) Kilopass threatened to sue Sidense's customers and potential customers as patent infringers. *Id.* at Dkt. 99 at 6-8, 10-11. The Court also granted summary judgment in favor of Kilopass on Sidense's (1) Lanham Trade-Mark Act false advertising claim based on the publishing of a "White Paper"; (2) Intentional Interference with Prospective Economic Advantage claim; and (3) Unfair Competition claim pursuant to the "unfair" and "fraudulent" prongs of the UCL. *Id.* at Dkt. 99 at 15-16, 19-20.

The following claims of the *Business Torts Case* survived summary judgment:

- ⬥ Defamation with respect to allegations that Kilopass made statements (i) in a

---

[1] The Court referred to a second amended complaint its summary judgment order; it is clear, however, that the Court was in fact ruling on the Third Amended Complaint.

United States District Court
Northern District of California

2

PowerPoint presentation to third parties that Sidense was knowingly offering licenses on invalid patents (Third Amended Complaint ¶ 14); (ii) to Sidense customers informing them that Sidense wanted its licensees to be charged as direct infringers (Third Amended Complaint ¶ 19); and (iii) to customers that Sidense was not financially stable or commercially viable (Third Amended Complaint ¶ 18);

- False Advertising with respect to allegations concerning the PowerPoint presentation (Third Amended Complaint ¶ 14);
- Intentional Interference with Contractual Relations; and
- Unfair Competition pursuant to the "unlawful" prong of the UCL

*Id.* at Dkt. 99 at 10, 13-15, 18-20.

### 3.    Completion of the *Patent Infringement* and *Business Torts Cases*

That same day, August 16, 2012, the Court issued its non-infringement order in the underlying *Patent Infringement Case*, finding that Sidense did not infringe Kilopass's patents. *Patent Infringement Case*, Dkt. 272.

Shortly thereafter, Sidense stipulated to voluntarily dismiss its remaining claims in the *Business Torts Case* with prejudice.  *Business Torts Case*, Dkt. 115.  In its stipulation, Sidense noted that the Court had adjudicated the underlying patent infringement claim and granted Kilopass's motion for summary judgment on many of Sidense's alleged business torts, thus substantially reducing Sidense's potential damages recovery compared to the cost of continued litigation. *Id.*

### 4.    The Present Antitrust Lawsuit

Sidense initiated the present antitrust suit on May 14, 2014, alleging that Kilopass "weaponized" the litigation process in the *Patent Infringement Case* to monopolize, or attempt to monopolize, the market for complimentary metal-oxide-semiconductor logic ("CMOS") embeddable antifuse one-time programmable ("OTP") nonvolatile memory ("NVM") technology. *Kilopass Techn. Inc. v. Sidense Corp.*, No. 14-cv-02238 ("*Antitrust Case*"), Dkt. 1.   In its

United States District Court
Northern District of California

3

complaint, Sidense alleged that Kilopass initiated a series of baseless lawsuits in a coordinated campaign to monopolize the CMOS OTP NVM technology market. *See id.* at Dkt. 1 ¶¶ 8-9, 12, 104. Sidense later amended its antitrust complaint, but the claims against Kilopass remained substantially the same: attempted and actual monopolization of the market pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2. *Id.* at Dkt. 37.

Kilopass filed the present motion to dismiss on October 2, 2015, arguing that the claims in Sidense's First Amended Complaint ("FAC") are barred by *res judicata* because they repeat claims that arise from the same common nucleus of facts as the *Business Torts Case* that Sidense filed and then dismissed with prejudice. *Id.* at Dkt. 44 at 7-12.

Kilopass additionally contends that Sidense has not pled sufficient facts establishing a legally cognizable market. *Id.* at Dkt. 44 at 13-20.

The Court will address each of these arguments in turn.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). As a general rule, the Court may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Moreover, it is improper for a court to assume "the [plaintiff] can prove facts that [it] has not alleged." *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

1    If the Court dismisses a complaint, it must decide whether to grant leave to amend.  The

2    Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no

3    request to amend the pleading was made, unless it determines that the pleading could not possibly

4    be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)

5    (citations and internal quotation marks omitted).

6

7                                    **DISCUSSION**

8    Kilopass argues that Sidense attempts to avoid *res judicata* on its monopolization claims

9    by strategically amending its complaint and deleting any allegations that overlap with allegations

10   made in the *Business Torts Case*.  *Antitrust Case*, Dkt. 47 at 6-7.  In the alternative, Kilopass

11   contends that Sidense has not sufficiently pled a legally cognizable market or facts establishing

12   barriers to market entry.  *Id.* at Dkt. 44 at 13-19.

13   Sidense argues that its claims are not barred by *res judicata* because the claims in the

14   *Business Torts Case* involved non-litigation conduct during the pendency of the *Patent*

15   *Infringement Case*, whereas the claims asserted in the present suit allege that Kilopass initiated the

16   *Patent Infringement Case* as a sham lawsuit in an effort to monopolize the market.  *Id.* at Dkt. 46

17   at 13-14.  Sidense contends that "any slight [factual] overlap with some of the amended business

18   tort allegations is merely superficial and contextual."  *Id.* at Dkt. 46 at 13.  Additionally, Sidense

19   argues that it has properly pled a relevant product market and that any refinement of the market

20   should await factual development.  *Id.* at Dkt. 46 at 14-20.

21

22   **1.    Res Judicata**

23   Kilopass contends that the complaint in this case alleges the same nucleus of facts alleged

24   in the *Business Torts Case*.  *Id.* at Dkt. 44 at 8-11; Dkt. 47 at 3-4.  In support of its argument,

25   Kilopass examines the evolution of Sidense's allegations from the Original Complaint in the

26   *Business Torts Case*, the Original Complaint in the *Antitrust Case*, and the First Amended

27

28

United States District Court
Northern District of California

5

Complaint in the *Antitrust Case*.[2]  Sidense argues that the claims are different and that any overlap is merely superficial and intended to provide context.  *Id.* at Dkt. 46 at 13.  The Court agrees with Sidense and finds that the claims brought here are not barred by *res judicata*.

A claim barred by *res judicata* requires "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties."  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (internal quotations and citation omitted).

### A.      Final Judgment and Identity of Parties

The second and third elements are not in dispute.  A final judgment on the merits occurred when Sidense voluntarily dismissed the *Business Torts Case* with prejudice.  *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) ("The phrase 'final judgment on the merits' is often used interchangeably with 'dismissal with prejudice.'").  The parties are identical:  Sidense is the plaintiff and Kilopass the defendant in both the present *Antitrust Case* and the *Business Torts Case*.  The issue is whether there is an identity of claims.

### B.      Identity of Claims

"The central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts."  *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (internal quotations and citation omitted).   Although the common nucleus test is often outcome determinative under the first *res judicata* element, there are other criteria a court may examine in determining whether two suits involve the same claim: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether the two suits involve infringement of the same right; and (3) whether substantially the same evidence is presented in the two actions.  *Mpoyo v. Litton-Electro-Optical Sys.*, 430 F.3d 985, 987-88 (9th Cir.

---

[2] It is unclear to the Court why Kilopass does not refer to the operative complaint in the *Business Torts Case* which served as the basis of the summary judgment motion, *i.e.*, the Third Amended Complaint.

United States District Court
Northern District of California

2005).

To begin, the Court can see no reason to compare the allegations made in the Original Complaint in the *Business Torts Case* to the allegations made in the First Amended Complaint in the *Antitrust Case*, as Kilopass did in its motion. *See, e.g.*, *Antitrust Case*, Dkt. 44 at 9. As mentioned above, Sidense amended its complaint in the *Business Torts Cas*e to remove any references to "baseless lawsuits" because it agreed with Kilopass that the claims were not ripe while the underlying *Patent Infringement Case* was still pending. *See Business Torts Case*, Dkt. 14-3 (showing the changes made to the Original Complaint in the *Business Torts Case* to make it the First Amended Complaint in the *Business Torts Case*). The Court has instead compared the operative Third Amended Complaint in the *Business Torts Case* ("BTAC") to the First Amended Complaint in the *Antitrust Case* ("ATAC").

That comparison yields the conclusion that there is not an identity of claims between the BTAC and the ATAC. The BTAC alleges that Kilopass engaged in unlawful conduct that was not directly related to litigation: Kilopass allegedly made false statements to Sidense's customers and others regarding Sidense's business liability and threatened, in several instances, to sue those customers. *See, e.g.*, BTAC ¶¶ 7-19. The ATAC, on the other hand, alleges that Kilopass "weaponized" the litigation process in an effort to monopolize the market by "forc[ing] Sidense to divert millions of dollars away from its marketplace and technological competition with Kilopass." ATAC ¶ 11. While it mentions scaring away customers, the bulk of the ATAC addresses the alleged sham litigation itself and its effect on Sidense's presence in the market. ATAC ¶¶ 10, 11, 41, 43, 108. Furthermore, as Sidense points out, Kilopass's Motion to Dismiss only takes exception to the supposed "factual overlap" in paragraphs 11, 43, 55, 88, and 101 of the ATAC (and these comparisons were all made against the Original Complaint in the *Business Torts Case*). *Antitrust Case*, Dkt. 44 at 5, 9-13.

Specifically, comparison of the roughly analogous allegations in the two complaints demonstrates the following:

United States District Court
Northern District of California

United States District Court
Northern District of California

| Third Amended Compl., *Business Torts Case* ("BTAC") | First Amended Compl., *Antitrust Case* ("ATAC") |
|---|---|
| "KILOPASS and CHENG began contacting SIDENSE customers and potential customers threatening to imminently sue them as patent infringers . . . falsely asserting that its [patents] were broad enough to cover SIDENSE's 1T™ Fuse memory products." BTAC ¶ 17. | No corresponding allegation regarding threats made against Sidense customers. |
| "KILOPASS . . . published [the "White Paper"] . . . implying that the bit cells illustrated therein depicted 'the Kilopass 1T and 2T' patented antifuse cells. However, the bit cell illustration . . . actually depicted Sidense's 1T bit cell." BTAC ¶ 11 (alterations omitted). | No corresponding allegation regarding misleading publications. |
| Kilopass made a statement that was "false, misleading and designed to make it appear that Sidense, which was founded in 2004, entered into business to copy Kilopass'[s] 1T technology." BTAC ¶ 12. Kilopass made a "false, misleading statement [] designed to make it appear that Sidense . . . entered into business to copy Kilopass'[s] 1T technology, which is demonstrably untrue." *Id.* | No corresponding allegations regarding false or misleading statements. |
| "KILOPASS and CHENG began publishing statements falsely indicating that SIDENSE's [patent was invalid] . . . , thereby foreclosing SIDENSE from challenging the validity of that patent." BTAC ¶ 15. | No corresponding allegations regarding false statements made about Sidense's patents. |
| "KILOPASS and CHENG began telling customers and potential customers that SIDENSE was refusing to take responsibility for its costumers' allegedly infringing chips and that SIDENSE was telling the Court that its customers, rather than SIDENSE, should be sued for patent infringement." BTAC ¶ 19. | No corresponding allegations regarding Sidense's refusal to take responsibility for its customers' alleged patent infringement. |
| "KILOPASS'[s] and CHENG's acts [may have deceived Sidense's customers and potential customers] and were material in that they were likely to influence the purchasing decisions of those in the marketplace." BTAC ¶ 29. | No corresponding allegation regarding purchasing decisions and, contrary to Kilopass's contention, BTAC ¶ 29 was not alleged in the context of patent litigation. *See Antitrust Case*, Dkt. 47 at 2. |
| Kilopass's conduct described in the complaint "is malicious, fraudulent, knowing, willful, and deliberate." BTAC ¶ 30. | "Kilopass initiated and maintained patent infringement litigation against Sidense in bad faith knowing there was no infringement." ATAC ¶ 86 (though the conduct the BTAC describes is statements made about Sidense's patents, not pursuit of underlying patent infringement). |
| "[T]hat Kilopass would imminently file suit against Sidense's customers if they would use, or continue to use, Sidense's technology . . . . | "Kilopass began plotting to block Sidense's progress with its patent portfolio." ATAC ¶ 5. Allegations that Kilopass was advised that |

8

United States District Court
Northern District of California

| | |
|---|---|
| that Sidense refused to take responsibility for its customers' chips that contain the embedded Sidense OTP in Kilopass's[s] lawsuit against Sidense." BTAC ¶ 22. | Sidense did not infringe Kilopass's patents. ATAC ¶¶ 18-24. |
| Kilopass made false statements regarding Sidense's business "with the knowledge that they were false, and with spite, hatred, and ill will toward SIDENSE." BTAC ¶ 23. | Allegations that (1) Kilopass was advised that Sidense did not literally infringe Kilopass's patents, (2) how Kilopass hired a new CEO looking to use the litigation process to prevent Sidense from competing and stifling entry from other would-be competitors, (3) Kilopass continued pursing litigation even after it lost the patent infringement suit on the merits in an attempt to interfere with Sidense's business. ATAC ¶¶ 5-10.  "Kilopass knew, or should have known, that Sidense did not infringe . . . Kilopass lacked probable cause or good faith belief for its assertion of literal patent infringement . . . Kilopass also plainly lacked probable cause for the assertion of patent infringement by equivalence . . ."  ATAC ¶¶ 39-41. |
| "As a result of KILOPASS'[s] and CHENG's defamatory statements, SIDENSE has suffered loss of customers, harm to its reputation and was exposed to contempt." BTAC ¶ 24. | As a "result of Kilopass'[s] anticompetitive conduct, and sham litigation, Sidense has . . . sustained a loss of goodwill." ATAC ¶ 105, 121 (the harm is similar but the alleged underlying conduct is different). |
| "[S]tating in a press release that [the '751 patent was affirmed] foreclose[ing] SIDENSE from challenging the validity of that patent." BTAC ¶ 28; *see also supra* BTAC ¶¶ 29-30. "KILOPASS and CHENG acted both oppressively and maliciously with intent to cause injury to SIDENSE," BTAC ¶ 40, in making statements "designed to interfere with and disrupt SIDENSE's relationships with existing and prospective customers." BTAC ¶ 39. | "The purpose of Kilopass'[s] sham patent infringement suit was not to win on the merits but to interfere directly with Sidense's actual and prospective business relationships." ATAC ¶ 42 (in contrast, the BTAC alleges the *statement* made in the press release was harmful to Sidense rather than the sham lawsuit). |
| Kilopass offered to pay for an editor, Mr. Clive Maxfield, to write an article "to make it falsely appear that the information and viewpoints appearing in the article were independent and unbiased observations of . . . the EE Times . . . implying that . . . the EE Times had independently, and without bias, concluded that companies whose products embody SIDENSE's technology could be exposed to costly litigation." BTAC ¶ 16. | No corresponding allegation regarding either the EE Times or its editor, Mr. Clive Maxfield. |
| Kilopass emailed to customers and potential customers falsely stating that, "US and Patent Trademark Office *Invalidates* All Claims of Sidense's Key Patent." BTAC ¶ 13. *See also supra*, BTAC ¶¶ 15, 17, 19. | The *Patent Infringement Case* "forced Kilopass'[s] only significant competitor, Sidense, to divert [resources] away from developing technology and marketplace competition to defend the lawsuit and respond to customer concerns engendered by Kilopass'[s] aggressive lawsuit publicity. ATAC ¶ 43.  "Kilopass'[s] disinformation campaign is not protected petitioning activity." |

United States District Court
Northern District of California

| | | |
|---|---|---|
| 1 | | ATAC ¶ 88.  "Kilopass'[s] baseless patent litigation scare[d] customers away from doing business with Sidense."  ATAC  ¶ 11.  "Kilopass'[s] conduct has additionally caused Sidense to incur substantial internal costs . . . to specifically deal with customer concerns regarding Kilopass'[s] patent litigation."  ATAC ¶ 101. |
| 5 | Kilopass told "Sidense customers and/or potential customers that, based upon Kilopass'[s] own 'in silicon' evaluation, Sidense's technology was not commercially viable, whereas Kilopass knew or should have known that these representations were false"  BTAC ¶ 10. | "Kilopass told prospective customers that Kilopass had built and tested the Sidense technology and found it could not be commercially viable, even though Kilopass had never conducted tests on a Sidense product that might lead to such a conclusion."  ATAC ¶ 31 (this was provided for context surrounding the antitrust claims). |
| 9 | Kilopass made false statements that Sidense's patents were invalid, Sidense's customers were at risk of being sued, and Kilopass's conduct influenced the purchasing decisions of buyers in the marketplace.  *See supra* BTAC ¶¶ 15, 19, 29 | "Kilopass'[s] illegal conduct prevented prospective competitors from entering the relevant market."  ATAC ¶ 91.  "Kilopass'[s] baseless patent litigation scare[d] customers away from doing business with Sidense."  ATAC ¶ 11 (similar harm, different conduct).  "Kilopass'[s] conduct has harmed competition in the market by checking customers and potential customers . . . from doing business with Sidense out of concern that use of the Sidense technology would cause them and their end user customers to become liable for patent infringement."  ATAC ¶ 97 (against, similar harm based upon different conduct).  Allegations regarding Kilopass's price lists established during the *Patent Infringement Case* and direct evidence that Kilopass had market power.  ATAC ¶ 68-70. |

The highlighted portion above is the only instance where, cosmetically at least, the ATAC appears to overlap on the facts of the BTAC.  But Sidense urges, this factual overlap appears merely to provide context for the causes alleged in the *Antitrust Complaint*.  While the resulting harm might be similar if all of the allegations were true — a loss of business to Sidense — the claims do not arise from the same transactional nucleus of facts.

Accordingly, the claims brought by Sidense in the present suit are not barred by *res judicata*.[3]

_____

[3] Having found that *res judicata* does not bar Sidense's antitrust claims, the Court need not address whether or not Kilopass acquiesced to Sidense's right to reassert them.  *See Antitrust*

**2.      Relevant Market**

Kilopass argues that Sidense has failed to plead facts that establish a legally cognizable market.  *Antitrust Case*, Dkt. 44 at 13-16.  As with its *res judicata* argument, Kilopass makes several references to the Original Complaint in the *Business Torts Case* and the Original Complaint in the *Antitrust Case*.  *Id.* at Dkt. 44 at 13-16.  Kilopass contends that Sidense's amendments do not express any actual changes to the relevant market.  *Id.* at Dkt. 44 at 14.  It further argues that the artificially narrowed market should be rejected.  *Id.* at Dkt. 47 at 13.  Sidense contends that it has alleged the "market for CMOS embeddable antifuse OTP NVM intellectual property" as a recognized market.  *Id.* at Dkt. 46 at 15.

On a Rule 12(b)(6) motion, "the validity of the 'relevant market' is typically a factual element rather than a legal element."  *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008).  "[A]lleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial."  *Id.*  Drawing all reasonable inferences in Sidense's favor, and assuming that all of its allegations are true, the Court need not determine what the relevant market should be.  The Court need only determine if Sidense's market allegations are plausible as pled.

The Court finds that Sidense has sufficiently pled the relevant market for its antitrust claims.  *See generally Antitrust Case*, Dkt. 37 ¶¶ 61-65.  Sidense alleges that the relevant market is "for CMOS embeddable antifuse OTP intellectual property."  *Id.* at Dkt. 37 ¶ 57.  Sidense describes the technologies that embeddable NVM products are based on.  *Id.* at Dkt. 37 ¶ 61.  It then explains how different technologies are chosen, and the factors affecting the market.  *Id.* at Dkt. 37 ¶ 61-62.  Simply put, Sidense has plausibly alleged a technology market in which Kilopass and Sidense compete.

Taken as true, Sidense has sufficiently pled a relevant market.

*Case*, Dkt. 46 at 6-7.

**3.      Barriers to Entry**

Insofar as Kilopass is arguing that Sidense has failed to plead facts sufficient to establish barriers to market entry, the Court is also unpersuaded.  Kilopass argues that Sidense does not allege any barriers to market entry that fit neatly into the categories set forth in *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*:

> Entry barriers are "additional long-run costs that were not incurred by incumbent firms but must be incurred by new entrants," or "factors in the market that deter entry while permitting incumbent firms to earn monopoly returns."  The *main sources* of entry barriers are: (1) legal license requirements; (2) control of an essential or superior resource; (3) entrenched buyer preferences for established brands; (4) capital market evaluations imposing higher capital costs on new entrants; and, in some situations, (5) economies of scale.

51 F.3d 1421, 1439 (9th Cir. 1995) (internal citations omitted) (emphasis added).  However, Kilopass appears to interpret *Rebel Oil*'s list of factors as the *only* sources of barriers to entry rather than the *main* sources.  "In evaluating entry barriers, we focus on their ability to constrain not 'those already in the market, but . . . those who would enter but are prevented from doing so.'" *Id.* at 1439 (citations omitted) (alterations in original).

Sidense alleges that entering the CMOS embeddable antifuse OTP NVM intellectual property market requires a substantial cost that would deter many firms from entering the market. *Antitrust Case*, Dkt. 37 ¶ 80.  Furthermore, the time investment required in evaluating the technologies — incorporating the risk that the technology is defective, leading to financial failure or ruin — likely also deters new entrants to the market.  *Id.* at Dkt. 37 ¶ 81.  Moreover, Sidense has alleged that it and Kilopass are the two significant producers in the current relevant market allowing for a plausible inference that buyer preferences between the parties have been entrenched.  Therefore, Sidense has sufficiently pled barriers to market entry.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby **DENIES** Kilopass's motion to dismiss.

**IT IS SO ORDERED**.

Dated:  December 2, 2015

_____
SUSAN ILLSTON
United States District Judge